# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 06-CV-1130 (JFB)(WDW)

————————————

U.S. UNDERWRITER'S INSURANCE COMPANY,

Plaintiff,

VERSUS

WILLIAM ZIERING,
444 FRANKLIN AVENUE CORPORATION,
AL-PROS CONSTRUCTION, INC.,
AL-FALOQ GENERAL CONSTRUCTION, INC.,
and FELICIA DAVIS.

Defendants.

————————————

**MEMORANDUM AND ORDER**
February 2, 2009

————————————

JOSEPH F. BIANCO, District Judge:

U.S. Underwriter's Insurance Company (hereinafter, "U.S. Underwriter's" or "plaintiff") brings this action against defendants William Ziering ("Ziering"), 444 Franklin Avenue Corporation ("444"), Al-Pros Construction, Inc. ("Al-Pros"), Al-Faloq General Construction, Inc. ("Al-Faloq") and Felicia Davis ("Davis"), seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 ("Federal Declaratory Act") for purposes of determining the parties' rights and liabilities with respect to insurance policy number CL 3084417 ("the policy") issued by plaintiff to Ziering doing business as ("d/b/a") 444 in 2005

and currently implicated in a state court action, captioned *Felicia Davis v. William Ziering, et al.*, New York Supreme Court, Kings County, Index. No. 20621/05 ("the state action"), initiated by Davis as against the remaining defendants for alleged damage to her property. Specifically, in the instant action, plaintiff claims that, because defendants Ziering, 444, Al-Pros and Al-Faloq violated the terms of the policy by failing to provide timely notice of an occurrence which potentially gave rise to a claim and further assumed obligations towards Davis regarding alleged property damage, the policy affords no coverage to them for any occurrences alleged in the state

action. Plaintiff seeks a declaration stating that it is not obligated to defend or indemnify any party to the underlying state action as to any claims asserted in those proceedings. Defendants Ziering, 444, Al-Pros, Al-Faloq and Davis,[1] in turn, have counter-claimed seeking a judgment dismissing plaintiff's complaint and declaring that plaintiff is obligated to defend them with respect to the underlying property damage state action. Defendants further counterclaim for attorney's fees incurred in the defense of the instant action. Defendants Ziering and 444 further claim that plaintiff violated a fiduciary duty owed to them by obtaining strategic, legal and financial benefit from the investigation related to the state action for purposes of assisting plaintiff's cause in the instant action and, therefore, plaintiff is estopped from denying them defense or indemnity in the state action.

Plaintiff now moves for summary judgment in its favor. For the reasons stated herein, plaintiff's motion is denied in its entirety.

## I. BACKGROUND

### A. Facts[2]

The Court has taken the facts described below from the parties' depositions, affidavits, exhibits, plaintiff's Local Rule 56.1 Statement of Facts ("Pl.'s 56.1"), defendants Al-Pros and Al-Faloq's Local Rule 56.1 Statement of Facts ("Al-Pros/Al-Faloq's 56.1") and defendant

---

[1] Davis filed an affirmation in opposition to the instant motion, but no Local Rule 56.1 Statement of Facts or memorandum of law in support therein.

[2] Where only plaintiff's 56.1 Statement is cited, the facts are taken from plaintiff's 56.1 Statement, and defendants do not dispute the fact asserted or have offered no admissible evidence to refute that fact.

Ziering and 444's Local Rule 56.1 Statement of Facts ("Ziering/444's 56.1"). In ruling on a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving parties. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001).

Ziering d/b/a 444 was a named insured under an insurance policy numbered CL 3084417, issued by plaintiff for the coverage period of May 6, 2005 through November 6, 2005. (Pl.'s 56.1 ¶ 2.) The policy provided, in relevant part, that "in the Event of Occurrence, Offense, Claim or Suit, [the insured] must see to it that we are notified as soon as practicable of an 'occurrence' or an offense, which may result in a claim." (*Id.* ¶ 3.) The policy further stated that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." (*Id.*)

In late 2004 or early 2005, 444 purchased property located at 16 Roosevelt Place in Brooklyn, New York, with the purpose of constructing a three-family dwelling which would be placed on the market for sale. (Firestein Aff. ¶ 4.) Ziering hired a contractor, Al-Faloq, to perform the construction activities on the premises, which included excavation and creation of a foundation on the lot. (*Id.* ¶¶ 5-6.) Ziering contends that he reached an agreement with Al-Pros and/or Al-Faloq wherein either would procure an insurance policy, prior to commencing construction activities, which would name Ziering as an insured. (Ziering Aff. ¶ 25.) Ziering paid Al-Pros $500 for this accord, but does not recall if the additional insurance was ever provided. (*Id.*) He believed, however, that any claims for monetary damages arising from construction

activities on his property would be covered under insurance provided by either Al-Pros or Al-Faloq. (*Id.* ¶ 27.)

Construction commenced some time between May 12 and May 19, 2005. (Firestein Aff. ¶ 7.) Ziering maintains that he did not supervise, direct or control the construction activities conducted on his property. (Ziering Aff. ¶ 20.)

On or about May 22, 2005, Ziering received a complaint from Davis, the owner of the adjacent lot located at 14 Roosevelt Place, that her property had sustained damages purportedly caused by construction activities taking place at 16 Roosevelt Place. (Pl.'s 56.1 ¶ 9.) By letter dated May 23, 2005, written by Ziering on behalf of Al-Faloq, Al-Faloq agreed to make certain repairs to Davis' property, addressing "cracks in the basement," door realignment, basement spackling and patio resurfacing. (*Id.* ¶ 10.) In the verified complaint filed in the state action, Davis represents that this was a "nominal[] offer[] to make superficial repairs to [Davis's] home." (Hazard Aff., Ex. C.)

According to Ziering, between May 23 and May 24, 2005, Ziering encountered New York City Building Inspector Kevin Post exiting Davis' residence, who represented to him that upon inspection of the residence, he had found no defects. (Ziering Aff. ¶ 18.) By letter dated June 1, 2005, Davis informed Al-Faloq and Ziering that "the damages are quite severe to be patched up . . . ." (Pl.'s 56.1 ¶ 11.) Ziering recalls reading this letter, but cannot specify when he did so. (Ziering Dep. at 77-80.)

By letter dated June 16, 2005 and addressed to Ziering and Al-Faloq, counsel for Davis advised both parties that construction activities at 14 Roosevelt Place were causing damage to Davis' residence on the adjacent property.

(Pl.'s 56.1 ¶ 12.) Ziering recalls reading this letter, but cannot specify when he did so. (Ziering Dep. at 80-83.) By facsimile letter dated July 13, 2005, addressed to Davis' counsel and copied to Ziering, Professional Engineer Brian E. Flynn stated that he had "unsuccessfully tried for the past two weeks since June 28th, 2005 to arrange for a building inspection of Felicia Davis's property at 14 Roosevelt Place, in Brooklyn." (Second Verveniotis Decl. ¶ 4, Ex. A.) Ziering asserted in the underlying state action that "we did attempt to have [Flynn] make an inspection but the plaintiff refused access." (First Verveniotis Decl. ¶ 4, Ex. A.)[3]

By letter dated July 15, 2005, counsel for Ziering informed counsel for Davis that "both Al Falooq [sic] Construction and 444 Franklin Avenue Corp. have agreed to repair any and all damage that may have been caused to your client's property as a result of the new construction . . . ." (Hazard Aff. ¶ 17, Ex. G.) Ziering's counsel further stated: "My client remains willing to rectify any damage that was caused to Ms. Davis [sic] home, however, it appears that Ms. Davis does not wish to cooperate." (*Id.*) Ziering has asserted in the instant action that this "so-called stated willingness was not that of WILLIAM ZIERING or 444 FRANKLIN AVENUE CORPORATION" but that "the repairs were to have been made by AL-PROS CONSTRUCTION INC. and/or AL-FALOQ GENERAL CONSTRUCTION, INC., who had [sic] previously agreed to make certain repairs to the property of FELICIA DAVIS."

---

[3] Counsel for Ziering in the instant action has noted that "it was not ZIERING that retained the engineer, it was either AL-FALOQ or AL-PROS who retained the engineer . . . ." (Firestein Aff. ¶ 15.)

(Ziering Aff. ¶ 10.)

On July 20, 2005, Davis filed a Summons and Verified Complaint in New York State Supreme Court, Kings County against Ziering, 444, Al-Pros and Al-Faloq, alleging that construction activities conducted at 16 Roosevelt Place by the named defendants were the proximate cause of damages to her residence. (Pl.'s 56.1 ¶ 5.) The next day, Davis filed an Order to Show Cause seeking to enjoin further construction activities at the site. (*Id.* ¶ 6.) On August 1, 2005, plaintiff first received notice of Ziering and 444's claim via facsimile letter forwarded by the Maureen Quigley Insurance Agency, attaching Davis' Summons, Verified Complaint and Order to Show Cause, filed in the state action. (*Id.* ¶ 4.) In his affidavit opposing the Order to Show Cause, sworn on August 4, 2005, Ziering stated that "[a]ny damages which was [sic] done to [Davis'] property by us we have at all times been willing to accept responsibility for and repair." (*Id.* ¶ 7.)

Ziering contends in the instant action, however, that the terms "us" and "we" as employed in that affidavit did not refer to Ziering or 444, but rather referred to Al-Pros and/or Al-Faloq. (Ziering Aff. ¶ 4.) Ziering's counsel represented in his affidavit filed in opposition to Davis' Order to Show Cause that "defendant has at all times been willing to accept responsibility for any damage done and has in fact made some repairs . . . ." (Pl.'s 56.1 ¶ 8.) However, Ziering notes in the instant action that neither he nor his corporation ever made any repairs to Davis' property and that the aforementioned representation by his attorney did not express his or his corporation's willingness to do so. (Ziering Aff. ¶ 5.) Ziering maintains that Davis had indicated to him that as long as repairs were made to her premises, she would be satisfied and, moreover, she never

expressed any intention to file any claim against Ziering or 444 for damages to her property.[4] (*Id.* ¶ 23.)

On August 4, 2005, counsel for plaintiff mailed a disclaimer letter to Ziering, copied to counsel for Davis, stating that it was denying coverage to Ziering because he violated the policy's prohibitions on late notice of claim and assumption of obligations. (Pl.'s 56.1 ¶ 14.)

B. Procedural History

On March 13, 2006, plaintiff filed its complaint in the instant action. On April 13, 2006, defendants Ziering and 444 answered and counter-claimed. On December 21, 2006, defendant Al-Pros and Al-Faloq answered. On June 13, 2007, defendant Davis answered and counter-claimed. Plaintiff filed its answers to Davis' and Ziering and 444's counterclaims on June 15, 2007 and July 13, 2007, respectively. Defendants Ziering and 444 filed an amended answer to plaintiff's complaint and counterclaim on January 30, 2008. On October 10, 2008, plaintiff moved for summary judgment. Defendants Ziering, 444, Al-Pros, Al-Faloq and Davis filed their opposition on November 17, 2008. Plaintiff filed its reply on December 11, 2008. Oral

---

4  Likewise, counsel for Davis argues that the agreement between the parties regarding repairs prior to her decision to end all communication with them "gave the Defendants the reasonable expectation that they could resolve the matter using their construction skills." (McDowell Aff. ¶ 5.) He further contends that, at the time repairs were discussed, "the Defendants did not yet know that the damage done by their construction was of such a nature that their construction skills would not be able to completely repair the damages to the property." (*Id.* ¶ 6.)

argument was held on January 29, 2009. This matter is fully submitted.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

## III. DISCUSSION

New York courts have granted summary judgment in favor of insurer plaintiffs seeking declaratory judgments when the insurance policy at issue contains an exclusion and the underlying injuries fall completely within the ambit of the exclusion. *See, e.g., U.S. Underwriters Ins. Co. v. Roka LLC*, No. 99 Civ. 10136, 2000 U.S. Dist. LEXIS 14401, at *12 (S.D.N.Y. Sept. 29, 2000); *U.S. Underwriters Ins. Co. v. Zeugma Corp.*, No. 97 Civ. 8031, 1998 U.S. Dist. LEXIS 14448, at *7 (S.D.N.Y. Sept. 15, 1998); *U.S. Underwriters Ins. Co. v. Beckford*, No. 93 Civ. 4272, 1998 WL 23754, at *5 (E.D.N.Y. Jan. 20, 1998); *Mount Vernon Fire Ins. Co. v. Future Tech Constr. Corp.*, No. 94 Civ. 1362, 1997 WL 419997, at *2-*3 (S.D.N.Y. July 28, 1997); *Mount Vernon Fire Ins. Co. v. Chios Constr. Corp.*, No. 94 Civ. 6107, 1996 WL

15668, at \*3-\*4 (S.D.N.Y. Jan. 17, 1996). An insurer which seeks to disclaim coverage via an exclusionary clause carries the burden of demonstrating that the exclusion is applicable "in clear and unmistakable language, which is subject to no other reasonable interpretation." *U.S. Underwriters v. Congregation B'nai Israel*, 900 F. Supp. 641, 645 (E.D.N.Y. 1995) (citations and internal quotations omitted).

Here, plaintiff seeks an order declaring that it is not obligated to defend or indemnify defendants Ziering, 444, Al-Pros and Al-Faloq or provide coverage for any claims by Al-Pros and/or Al-Faloq as against Ziering or 444 under the relevant policy from claims arising out of the underlying state action instituted by Davis. Plaintiff submits that the clear and unmistakable language of the policy at issue excludes coverage if the insured fails to notify it of an occurrence which may give rise to a claim or if the insured assumes any obligations without the express permission of the insurer. Although plaintiff contends that summary judgment in its favor on these issues is warranted, the Court disagrees for the reasons discussed below.

### A. Timely Notice

Plaintiff first argues that it is entitled to disclaim coverage under the relevant policy because Ziering and 444 violated the provision therein which states that "[the insured] must see to it that we are notified as soon as practicable of an 'occurrence' or an offense, which may result in a claim" when they failed to notify plaintiff of Davis' complaints regarding alleged damage to her property. For reasons stated *infra*, the Court concludes that material issues of genuine fact preclude summary judgment in plaintiff's favor on this ground.

### 1. Legal Standard

It is well-settled that "[u]nder New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *Sparacino v. Pawtucket Mut. Ins.*, 50 F.3d 141, 143 (2d Cir. 1995); *see Comm. Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir. 1987); *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 121 (2d Cir. 1984); *Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436 (N.Y. 1972). "[Notice-of-occurrence provisions] enable insurers to make a timely investigation of relevant events and exercise early control over a claim. Early control may lead to a settlement before litigation and enable insurers to take steps to eliminate the risk of similar occurrences in the future. When insurers have timely notice of relevant occurrences, they can establish more accurate renewal premiums and maintain adequate reserves." *Comm. Union Ins. Co.*, 822 F.2d at 271. Thus, when the insured provides untimely notice to the insurer in violation of such a provision, that insurer may disclaim coverage regardless of any prejudice suffered as a result of the delay. *See J.J.J. Props. v. Travelers Indem. Co.*, No. 07 Civ. 0135, 2008 U.S. Dist. LEXIS 51992, at \*7 (S.D.N.Y. July 7, 2008); *see also Sec. Mut. Ins. Co.*, 31 N.Y.2d at 441; *Smalls v. Reliable Auto Serv., Inc.*, 205 A.D.2d 523 (N.Y. App. Div. 1994).

"The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." *Sparacino*, 50 F.3d at143; *see also Stone & Webster Mgmt. Consultants, Inc. v. Travelers Indem. Co.*, 1996 U.S. Dist. LEXIS 4852, at \*53 (S.D.N.Y. Apr. 16, 1996). Untimely notice

may not preclude coverage, however, if the insured reasonably believed that it did not face liability. *See Comm. Union Ins. Co.*, 822 F.2d at 271; *Sec. Mut. Ins.*, 31 N.Y.2d at 441; *Kason v. City of New York*, 373 N.Y.S.2d 456, 459 (N.Y. Sup. Ct. 1975) (citing cases); *accord Kambousi Restaurant, Inc. v. Burlington Ins. Co.*, 2009 N.Y. Slip Op. 241, at *2 (N.Y. App. Div. Jan. 20, 2009) ("[I]f the insured has established a good-faith belief of nonliability, said belief may excuse the claimed untimely notice. The insured's belief of non[-]liability must be objectively reasonable.") (citation omitted); *Beach Haven Apartments v. Allcity Ins. Co.*, 581 N.Y.S.2d 689, 690 (N.Y. App. Div. 1992) ("[T]he insured's good-faith belief that it is not liable will excuse a failure to give timely notice if the belief is reasonable under all the circumstances of the case."). In such a situation, the insured bears the burden of providing a reasonable excuse for delayed notification. *See Bauer v. Whispering Hills Assocs.*, 620 N.Y.S.2d 147, 149 (N.Y. App. Div. 1994). "If the insured is a business, then its delay in notifying the insurer will only 'be excused if a reasonable business person would have made the same decisions under the same circumstances.'" *United States Liab. Ins. Co. v. 204 W. 78th St. Hous. Corp., et al.*, No. 01 Civ. 1033, 2002 U.S. Dist. LEXIS 210, at *7 (S.D.N.Y. Jan. 8, 2002) (quoting *Mount Vernon Fire Ins. Co. v. DLRH Assocs.*, 967 F. Supp. 105, 110 (S.D.N.Y. 1997)). "The duty to give notice arises when, from the information available relative to the accident, an insured could glean a reasonable possibility of the policy's involvement. The reasonableness of the belief does not turn on whether the insured believes he will ultimately be found liable for the injury, but whether he has a reasonable basis for a belief that no claim will be asserted against him." *Kaesong Corp. v. United Nat'l Specialty Ins. Co.*, No. 07 Civ. 2897, 2008 U.S. Dist. LEXIS 34254, at *8 (E.D.N.Y. Apr. 25, 2008).

Moreover, "[w]here a reasonable person could envision liability, that person has a duty to make some inquiry as to potential liability." *York Specialty Food, Inc. v. Tower Insurance Co. of N.Y.*, 47 A.D.3d 589, 590 (N.Y. App. Div. 2008).

As numerous courts have noted, "[w]hether a delay in notifying the insurer is reasonable is a question of fact normally left for determination at trial, but where the insured provides no excuse for the delay in notifying the insurer, and where mitigating circumstances are absent, the issue may be disposed of as a matter of law in advance of trial." *DLRH Assocs.*, 967 F. Supp. at 108 (internal quotations omitted); *see also State of New York v. Blank*, 27 F.3d 783, 795 (2d Cir. 1994); *U.S. Underwriters Ins. Co. v. Roka LLC*, No. 99 Civ. 10136, 2000 U.S. Dist. LEXIS 14401, at *14-*15 (S.D.N.Y. Sep. 29, 2000). Thus, whether notice was provided in a reasonable amount of time may only be decided as a matter of law when "(1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." *Blank*, 27 F.3d at 795; *Hartford Fire Ins. Co. v. Masternak*, 390 N.Y.S.2d 949, 952 (N.Y. App. Div. 1977) ("It is only when no excuse is offered for the delay, or when no credible evidence supports the proffered excuse, that notice will be held untimely as a matter of law"); *Deso v. London & Lancashire Indem. Co. of America*, 3 N.Y.2d 127, 129 (N.Y. 1957) ("[it] is also well settled that the reasonableness of a delay, where mitigating circumstances . . . are offered as an excuse, is usually for the jury."). Where the insured provides no excuse for the delay, New York courts have found, as a matter of law, that relatively brief time lapses constitute untimely delay. *See, e.g., id.* (fifty-one days); *Rushing v. Commercial Casualty Ins. Co.*, 251 N.Y.

302, 304 (N.Y. 1929) (twenty-two days); *Haas Tobacco Co. v. American Fidelity*, 226 N.Y. 343 (N.Y. 1919) (ten days); *Quinlan v. Providence Washington Ins. Co.*, 133 N.Y. 356, 362 (N.Y. 1892) (thirty-three days); *Power Auth. of New York v. Westinghouse Elec. Corp.*, 117 A.D.2d 336, 342-43 (N.Y. App. Div. 1986) (fifty-three days); *Republic New York Corp. v. Amer. Home Assurance Co.*, 509 N.Y.S.2d 339 (N.Y. App. Div. 1986) (forty-five days); *Gov't Employees Ins. Co. v. Elman*, 338 N.Y.S.2d 666 (N.Y. App. Div. 1972) (mem.) (twenty-nine days); *Vanderbilt v. Indemnity Ins. Co.*, 265 A.D. 495, 496 (N.Y. App. Div. 1943) (twenty-eight days); *Reina v. United States Casualty Co.*, 239 N.Y.S. 196 (N.Y. App. Div. 1930) (twenty-six days), *aff'd*, 256 N.Y. 537 (N.Y. 1931); *Gullo v. Commercial Casualty Ins. Co.*, 226 A.D. 429, 434 (N.Y. App. Div. 1929) (thirteen days).

## 2. Application

Here, plaintiff submits that Ziering d/b/a 444 was first made aware of an occurrence that may have resulted in a claim on or about May 24, 2005 and failed to provide notice of that occurrence until August 1, 2005, over two months later. Without excuse, this lapse in time would certainly constitute "untimely notice" under controlling New York law. Ziering, however, argues that he had no reasonable belief of liability under the circumstances known to him at the relevant time and, therefore, the delay should be excused. Specifically, he notes that he did not supervise the work being performed at the construction site, his general contractor Al-Faloq had agreed to assume liability for any damages caused therein, he was ignorant of relevant provisions of New York law regarding insurance exclusion clauses, the Building Inspector he encountered departing Davis' residence soon after she first lodged her complaints declared that he had

found no defects therein, and finally, he believed himself to be named as an additional insured on Al-Faloq's insurance policy, which he believed would cover any monetary claims arising from construction activities on his property. Indeed, Ziering has represented that after investigating the alleged damage to Davis' home and discussing it with her, he was left with the impression that she would not be filing a claim against him and, moreover, that any claim arising from the alleged damage would be addressed by Al-Pros and/or Al-Faloq, pursuant to an agreement he had reached with those parties.

As plaintiff notes in its reply memorandum, there is no dispute that Ziering was made aware in late May of 2005 that Davis attributed damage to her property to construction activities ongoing at his property and that letters later exchanged between counsel for the two parties confirm that fact. However, Ziering does dispute that those communications led him to believe that his policy with plaintiff insurer was somehow implicated, as he understood a prior agreement with Al-Pros and/or Al-Faloq regarding responsibility for those damages to immunize him from future claims. He further disputes that representations he or his attorney made in correspondence with Davis or in the underlying state action regarding repairs to the damages at issue prove he was aware of a potential claim, because all such representations allegedly referred to obligations of Al-Pros and/or Al-Faloq, not Ziering or 444. Finally, Ziering disputes that Professional Engineer Brian Flynn's attempts to inspect Davis' property prior to the commencement of the state action indicate that he was properly aware of a possible claim, as Ziering asserts that Al-Pros and/or Al-Faloq hired Flynn in accordance with the agreement that they would accept liability for

any damages caused by their activities.

The Court concludes that, in light of the aforementioned issues, the record is replete with factual disputes bearing on defendants' excuse for delayed notification including, among other things, disputes regarding Ziering's knowledge regarding the nature and severity of any damages to Davis' property, Ziering's belief that the general contractors would take responsibility for any damage, the timing of Ziering's awareness of letters from Davis' counsel, and the nature of conversations with Davis regarding whether Davis would hold Ziering responsible for any damage. Although plaintiff questions the strength of Ziering's explanations, it is not the province of this Court to determine the credibility of Ziering's proferred excuses at this juncture in the proceedings in light of these factual disputes. In other words, construing the facts most favorably to defendants, and drawing all reasonable inferences in their favor, summary judgment is unwarranted on the issue of whether Ziering had a reasonable belief that his insurance policy was not implicated by the alleged damages caused by the activities of Al-Pros and/or Al-Faloq. *See Blank*, 27 F.3d at 795 (summary judgment inappropriate where "the facts bearing on the delay in providing notice" are disputed); *Mount Vernon Fire Ins. Co. v. J.V. Car Wash*, No. 97 Civ. 3932, 1998 U.S. Dist. LEXIS 10957, at *4-*5 (S.D.N.Y. July 20, 1998) (issue of reasonable belief reserved for jury where insured had consulted with attorney and insurance broker regarding liability after occurrence); *DLRH Assocs.*, 967 F. Supp. at 108 (whether delayed notification is reasonable is a question of fact); *U.S. Underwriters Ins. Co. v. Congregation B'Nai Isr.*, 900 F. Supp. 641, 647 (E.D.N.Y. 1995) (whether insured property owner's belief that contractor was liable for injury suffered on premises was a reasonable one warranting delayed notification was a

question of fact); *Generali-U.S. Branch v. Rothschild*, 295 A.D.2d 236, 238 (N.Y. App. Div. 2002) (whether insured property owner's six year delay in notifying insurer of potential claim after Department of Housing Preservation and Development issued lead paint violation and tenant's child tested positive for the substance was reasonable was question of fact for the jury because insured parties believed repainting the apartment at issue had satisfied tenants); *Kaliandasani v. Otsego Mut. Fire Ins. Co.*, 256 A.D.2d 310, 325 (N.Y. App. Div. 1998) (whether insured property owner's nine month delay in notifying insurer of receipt of Order to Abate Nuisance stating that tenant child had high levels of lead in his blood was reasonable was question of fact because insured believed remediating the situation had satisfied tenants); *G.L.G. Contracting Corp. v. Aetna Casualty & Sur. Co.*, 626 N.Y.S.2d 307, 309 (N.Y. App. Div. 1995) (whether owner of premises where claimant was injured properly delayed notifying insurer about the incident was question of fact despite insurer's argument that owner's purported belief of nonliability was not credible, as credibility issues were reserved to the trier of fact); *E.T. Nutrition v. Central Mut. Ins. Co.*, 201 A.D.2d 451 (N.Y. App. Div. 1994) (whether insured store owner's eleven month delay in notifying insurer of criminal investigation into potential product tampering of store's wares was reasonable was question of fact because insured believed investigating detective would inform it if the product was actually contaminated).

In sum, given the disputed issues in this case regarding Ziering's explanation for the delay in notification, the issue of whether Ziering's failure to recognize his potential liability and duly report it to plaintiff was reasonable under the circumstances is

properly reserved for the trier of fact and, thus, summary judgment on this issue is denied.

## B. Assumption of Obligation

Plaintiff next argues that defendants, in offering to repair Davis' property, have violated the term of the policy at issue which states that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."[5] Ziering and 444 submit that, first, the plain language of the exclusionary clause does not preclude coverage for Davis' remaining claims if defendants do not seek reimbursement for costs already voluntarily incurred,[6] and second, that any offers to repair Davis' property were made by

---

[5] Though plaintiff does not advance this argument in the memorandum of law filed in support of the instant motion, the declaration of Cheryl Hazard filed in support therein does reference this provision of the relevant policy and states that "coverage was properly disclaimed on the grounds that defendant ZIERING breached the terms of the Policy by failing to obtain U.S. UNDERWRITERS' consent prior to the mailing of . . . letters . . . agreeing to repair any and all damage that may have been caused to DAVIS's property as a result of construction activities being performed at 16 Roosevelt Place, Brooklyn, New York." (Hazard Aff. ¶ 18.) Thus, in an abundance of caution, the Court has construed the summary judgment motion to be made on this ground as well and, as discussed *infra*, concludes summary judgment on this issue also is unwarranted.

[6] Defendants Ziering and 444 do not contest that "any repairs to the Davis premises made by the contractor were without the consent of U.S. UNDERWRITERS, and for purposes of this motion, Defendant ZIERING would agree that those costs would not be reimburseable to it by U.S. UNDERWRITERS." (Ziering and 444's Memorandum of Law, at 13.)

Al-Pros and/or Al-Faloq, not Ziering and/or 444. Al-Pros and Al-Faloq concur with Ziering's and 444's first argument and further submit that the exclusion is inapplicable because the allegations in Davis' state action complaint go well beyond the minor repairs that they offered to make. Again, as with plaintiff's delayed notification argument and for reasons stated *infra*, the Court finds that genuine issues of material fact preclude summary judgment on whether this conduct relieves plaintiff from its obligation to defend and/or indemnify defendants.

### 1. Legal Standard

It is well-settled that "[p]rovisions such as the foregoing, which reserve to the insurer the control of litigation and settlement, have been consistently enforced. Accordingly, an insured who does not comply with the terms of his policy by preserving for his insurer the opportunity to defend or compromise, is usually not entitled to recover under his contract." *Diversified Mortg. Investors v. U.S. Life Title Ins. Co.*, 544 F.2d 571, 575 (2d Cir. 1976) (internal citations omitted); *see Agway, Inc. v. Travelers Indem. Co.*, No. 93 Civ. 557, 1993 U.S. Dist. LEXIS 21092, at *48 (N.D.N.Y. Dec. 6, 1993); *Caporino v. Travelers Ins. Co.*, 476 N.Y.S.2d 519, 521 (N.Y. 1984) (courts "may not disregard clear provisions which the insurers inserted in [an insurance policy] and the insured accepted"); *Schefflin v. Title Guarantee and Trust Co.*, 28 N.Y.S.2d 838 (N.Y. App. Div. 1941), *aff'd mem.*, 292 N.Y. 533 (1944); *but see Smart Style Indus. v. Pennsylvania Gen. Ins. Co.*, 930 F. Supp. 159, 163 (S.D.N.Y. 1996) (ruling that, in the context of when an insurer's "duty to defend" is triggered such that it must pay the insured's attorney's fees, "a 'voluntary payments' clause cannot literally be read as prohibiting an insured from

incurring any expense without the explicit prior approval of the insurer. Rather, the clause must be construed according to the reasonable expectations of the insured.").

## 2. Application

Here, plaintiff argues that Ziering and 444 violated this provision by "mailing . . . letters . . . agreeing to repair any and all damages that may have been caused to DAVIS's property as a result of construction activities being performed at 16 Roosevelt Place, Brooklyn, New York." (Hazard Aff. ¶ 18.) In the first such letter, dated May 23, 2005 and written by Ziering on behalf of Al-Faloq to Davis, Al-Faloq agrees to make specific repairs to Davis' property. The second letter at issue, dated July 15, 2005 and addressed from counsel for Ziering to counsel for Davis, states that "both Al Falooq [sic] Construction and 444 Franklin Avenue Corp. have agreed to repair any and all damage that may have been caused to your client's property as a result of the new construction." (Hazard Aff. ¶ 17, Ex. G.) Counsel goes on to write: "My client remains willing to rectify any damage that was caused to Ms. Davis [sic] home, however, it appears that Ms. Davis does not wish to cooperate." (*Id.*)

Ziering submits that he never performed or funded any repairs and any expressed willingness to rectify damage caused by construction activities was that of Al-Faloq and/or Al-Pros; therefore, according to Ziering, he did not breach the policy provision prohibiting unauthorized assumption of responsibility. Al-Faloq and Al-Pros, while admitting that they did perform the repairs offered in the May 23, 2005 letter, argue that they do not seek policy coverage for the monies expended to that end and therefore those obligations were undertaken at the "insured's own cost," and should not preclude policy coverage of further claims brought by Davis. (Mitchell Aff. ¶ 33.) They further submit that any offers to make repairs tendered thereafter referred to damages similar to the "superficial" and "nominal" ones they had already addressed, and not "the same damages that would support Ms. Davis' ad danum [sic] of $3 million" in the underlying state action. (*Id.* ¶ 37.)

As with the issue of delayed notification, material factual disputes preclude this Court from ruling, as a matter of law, that Ziering breached this provision of the relevant policy. Construing the facts most favorably to Ziering, including drawing reasonable inferences in defendants' favor, a rational trier of fact crediting Ziering's testimony could conclude that any obligations towards Davis were assumed by Al-Pros and/or Al-Faloq, not Ziering or 444. Likewise, a trier of fact could determine that, in assuming responsibility for repairs to Davis' property, Al-Pros and/or Al-Faloq were referring to those of a "superficial" and "nominal" nature, similar to those they had addressed previously, and not the extensive damages Davis later alleged in the state court action. As such, the trier of fact could determine that the named insured on the policy at issue had not assumed any obligations to Davis beyond those incurred at their own cost. Accordingly, under these circumstances, where there are conflicting facts and varying reasonable inferences that could be drawn from those facts, it is not the province of this Court to "weigh the evidence and determine the truth of the matter" at this stage in the proceedings. *Anderson*, 477 U.S. 242, 249 (1986). Therefore, the factual disputes preclude summary judgment in plaintiff's favor on the grounds that defendants violated the "voluntary payment" provision of the relevant policy.

## C. Estoppel

Defendants Ziering and 444 finally argue that because plaintiff utilized the same claims handler for both the underlying state and the instant actions, respectively, it should be estopped from disclaiming coverage, despite the fact that it did employ independent counsel to represent Ziering and 444 in the state action, pursuant to its duty to defend. *See, e.g., Coregis Ins. Co. v. Lewis, et al.*, No. 01 Civ. 3844, 2006 U.S. Dist. LEXIS 55326, at *46 (E.D.N.Y. Aug. 2, 2006) ("Where . . . an insurer retains counsel to defend an insured in litigation, . . . the attorney's 'paramount' client is the insured.") (citing *Feliberty v. Damon*, 527 N.E.2d 261, 265 (N.Y. 1988)). However, because summary judgment is precluded on the other grounds cited above, consideration of defendants' estoppel argument is unnecessary at this stage in the proceedings.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment seeking a declaratory judgment that it need not indemnify or defend defendants in the underlying state action is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:     February 2, 2009
           Central Islip, New York

* * *

Attorney for plaintiff is Steven Verveniotis, Miranda Sokoloff Sambursky Slone Verveniotis, LLP, 240 Mineola Boulevard, Mineola, NY, 11501. Attorney for defendants William Ziering and 444 Franklin Avenue Corp. is Jason Stuart Firestein, Rubin & Licatesi, P.C., 591 Stewart Avenue, Fourth Floor, Garden City, NY, 11530. Attorney for defendants Al-Pros Construction, Inc. and Al-Faloq General Construction, Inc. is William Joseph Mitchell, Ahmuty, Demers & McManus, 200 I.U. Willets Road, Albertson, NY, 11507. The attorney for defendant Felicia Davis is Derek P. McDowell, 1476a Fulton Street, Brooklyn, NY, 11216.